**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION**

| | | |
|---|---|---|
| **CRISS MURPHY, NORMAN JORDAN, ANDINO WARD, EDDIE BARNES, JR., PAUL HANNON, CURTIS NELSON, DAVID CHAMBERS, DENNIS COLEMAN, HERION MURPHY, and VINCENT SAFFORD,** Individually and on Behalf of Others Similarly Situated, | ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 06-CV-0480<br><br>District Judge: Gary L. Sharpe<br>Magistrate Judge: David R. Homer |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| **SUPER STEEL SCHENECTADY INC.,** | ) ) ) | |
| Defendant. | | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CONSENT DECREE**

**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Tel: (646) 723-2947
Fax: (646) 723-2948
swittels@nydclaw.com

*Counsel for Plaintiffs and the Class*

# <u>Table of Contents</u>

**TABLE OF AUTHORITIES**……………………………………………………… **iii**

**INTRODUCTION**…………….................................................................. **1**

**PROCEDURAL HISTORY** **1**

**FACTUAL BACKGROUND**……………................................................ **5**

**ARGUMENT**………………........................................................................ **6**

    **POINT 1: THE PROPOSED CONSENT DECREE IS FAIR,**
    **REASONABLE AND ADEQUATE, AND SHOULD BE**
    **APPROVED IN ALL RESPECTS**……………………………………… **6**

    A.  **THE LAW FAVORS CLASS ACTION SETTLEMENTS** ………… **6**

    B.  **THE SECOND CIRCUIT'S STANDARD FOR APPROVAL**
       **OF CLASS ACTION SETTLEMENTS UNDER RULE**
       **23(e)**………………........................................................... **8**
            **(1) Substantive Fairness**………………….................................... **9**
            **(2) Procedural Fairness**……………………………………………… **10**

    C.  **THE SUBSTATIVE TERMS OF THE SETTLEMETN ARE**
       **FAIR, REASONABLE AND ADEQUATE UNDER THE**
       **SECOND CIRCUIT'S NINE FACTOR TEST FOR**
       **EVALUATING CLASS ACTION SETTLEMENTS**……………….. **11**

       **(1) The Complexity, Expense and Likely Duration of This**
       **Litigation Favor Final Approval**……………………………............. **11**

       **(2) The Reaction of the Class to the Settlement Favors**
       **Final Approval**……………………….................................... **12**

       **(3) The Stage of the Proceedings and the Amount of**
       **Discovery Completed Favor Final Approval**…………………… **12**

       **(4, 5, 6) Risks of Class Prevailing—Establishing Liability**
       **and Damages and Maintaining the Class Action Through**
       **Trail—Favor Final Approval**……………………………………….. **13**

       **(7) The Ability of the Defendants to Withstand a Greater**
       **Judgment Favors Final Approval**……………………............. **14**

       **(8, 9) The Settlement Fund Is Clearly Reasonable In**

Light of the Best Possible Recovery and All Attendant Risks of
Litigation…………………………………………………………… 15

D. THE SETTLEMENT IS A PRODCUT OF ARM'S
LENGTH NEGOTIATIONS AMONG EXPERIENCED
COUNSEL……………………………………………………….…... 17

(1) Experienced Counsel Represented Both Parties in
This Case………………………………………………………… 17

(2) The Proposed Consent Decree Was Negotiated by
Experienced Counsel After a Two-Day Mediation Before
a Mediator With Significant Experience in Class Action
Settlements…………………………………………………………… 18

POINT II: APPROPRIATE AND ADEQUATE NOTICE OF
THE SETTLEMETN HAS BEEN PROVIDED TO THE CLASS……… 18

A. THE PARTIES HAVE COMPLIED FULLY WITH THE
NOTICE ORDERED BY THE COURT…………………………….. 19

B. THE NOTICE INFORMED ALL CLASS MEMBERS OF
THE SETTLEMENT TERMS AND THEIR RIGHT TO
OBJECT AND EXCLUDE THEMSELVES FROM THE
SETTLEMENT…………………………………………………............ 20

POINT III: CERTIFICATION OF THE SETTLEMENT CLASS
IS APPROPRIATE AND WARRANTED………………………………. 21

CONCLUSION…………………………………………………………… 21

# Table of Authorities

FEDERAL CASES:
7-Eleven v.  Southland Corp.,
     85 Cal.  App. 4th 1135 (Ct. Cal 2000) …………………………………… 16

Armstrong v. Whirlpool Corporation,
     2007 U.S. Dist. LEXIS 14635 (M.D. Tenn. 2007) ……………………… 14

Banyai v. Mazur,
     2007 WL 927583                   9, 12
     (S.D.N.Y.)………………………………………………………………

Chatelain v. Prudential-Bache Properties, Inc.,
     805 F.Supp 209, 212 (S.D.N.Y. 1992) ……………………….............. 9, 17, 18

Churchill Vill. v. G.E.,
     361 F.3d 566, 575 (9th Cir. 2004), cert. denied, 125 S. Ct. 556 (2004) ..... 20

City of Detroit v. Grinnell Corp.,
     495 F.2d 448, 462-3 (2d Cir.1974) ………………………………......... *passim*

Class Plaintiffs v. City of Seattle,
     955 F.2d 1268, 1276 (9th Cir. 1992) …………………………………...... 11

Foe v. Cuomo,
     700 F. Supp. 107, 110 (E.D.N.Y. 1988), aff'd, 892 F.2d 196 (2nd Cir.
     1989), cert. denied, 498 U.S. 972 (1990) ………………………………… 8

Frank v. Eastman Kodak Co.,
     228 F.R.D. 174, 185 (W.D.N.Y. 2005) …………………………………... 12

Georgine v. AmChem Prods.,
     160 F.R.D. 478 (E.D. Pa. 1995) ……………………………………..... 20

Grant v. Bethlehem Steel Corp.,
     823 F.2d 20, 22 (2d Cir. 1985) ………………………………………… 9

Grassilli v. Barr,
     142 Cal.App.4th 1260 (Ct. Cal. 2006) …………………………………… 15

Handschu v. Special Servs. Div.,
     787 F.2d 828 (2d Cir. 1986) …………………………………………... 20

Hanlon v. Chrysler Corporation,

150 F.3d 1011, 1026 (9th Cir. 1998) …………………………………… 14

Hoffman Elec., Inc. v. Emerson Elec. Inc.,
    800 F. Supp. 1279 (W.D. Pa. 1992) …………………………………….. 20

Holmes v. Continental Can Co.,
    706 F.2d 1144, 1148 (11th Cir. 1983) …………………………………… 16

In re "Agent Orange" Prod. Liab. Litig.,
    821 F.2d 139, 145 (2d Cir. 1987) ………………………………………… 10

In re Computron Software, Inc. Securities Litigation,
    6 F.Supp.2d 313, 317 (D.N.J. 1998) …………………………………....... 7

In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability
Litigation,
    55 F.3d 768, 784 ………………………………………………………..... 7

In re Ira Haupt & Co.,
    304 F.Supp. 917, 934 (S.D.N.Y.1969) …………………………………... 13

In re Jackson Lockdown/MCO Cases,
    107 F.R.D. 703, 710 (E.D. Mich. 1985) ………………………………… 16

In re Michael Milken and Associates Securities Litig.,
    150 F.R.D. 57, 65 (S.D.N.Y. 1993) …………………………………….... 7, 12

In re Painewebber Ltd. P'ships Litig.,
    171 F.R.D. 104, 126 (S.D.N.Y.1997) …………………………………… 13, 17

In re Prudential Secs. Ltd. Pshps. Litig.,
    164 F.R.D. 362, 369 (S.D.N.Y. 1996) …………………………………… 19

In re Twin Lab Corporation Securities Litigation,
    187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ………………………………… 7

In re Union Carbide Corporation. Consumer Products Business. Securities
Litigation,
    718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) ……………………………..... 6, 7

In re United States Oil & Gas Litig.,
    967 F.2d 489, 493 (11th Cir. 1992) …………………………………….... *passim*

In re Warfarin Sodium Antitrust Litigation,
    212 F.R.D. 231, 254 (D. Del. 2002)……………………………………... 8

In re Warner Comm'cns Sec. Litig.,
     618 F. Supp 735, 746 (S.D.N.Y.1985) …………………………………....   14

In re Warner Comm'cns Sec. Litig,
     798 F.2d 35, 37 (2d Cir. 1986) …………………………………………   10

Isby v. Bayh,
     75 F.3d 1191, 1196 (7th Cir. 1996) …………………………………....   8

Lazy Oil Co. v. Witco Corporation,
     95 F.Supp.2d 290, 330 (W.D. Pa. 1997) ………………………………....   8

Leisner v. New York Tel. Co.,
     398 F. Supp 1140 (S.D.N.Y. 1974) ………………………………………   16

Lewis v. Newman,
     59 F.R.D. 525, 529 (S.D.N.Y. 1973) ……………………………………..   8

Malchman v. Davis,
     706 F.2d 426, 433 (2d Cir.1983) …………………………………………   9, 10

Maywalt v. Parker & Parsley Petroleum Co.,
     67 F.3d 1072, 1079 (2d Cir. 1995) ………………………………………   8, 18

Newman v. Stein,
     464 F.2d 689, 691-92 (2d Cir. 1972) ……………………………………   8

Officers for Justice v. Civil Sev. Comm'n.,
     688 F.2d 615, 629 (9th Cir. 1982) ………………………………………   11

Parks v. Portnoff Law Associates,
     243 F. Supp. 2d 244, 249 (E.D. Pa. 2003) ………………………………....   8

Patterson v. Balsamico,
     440 F.3d 104 (2d Cir. 2006) ……………………………………….........   15

Phillips Petroleum Co. v. Shuns,
     472 U.S. 797, 812 (1985) …………………………………………….....   19

Plummer v. Chemical Bank,
     668 F.2d 654, 655 n.1 (2d Cir. 1982) ……………………………………..   10

Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.,
     2006 WL 3681138 (E.D.N.Y.,2006)………………………………………   13

Republic Nat'l Life Ins. Co. v. Beasley,

73 F.R.D. 658, 668 (S.D.N.Y.1977) …………………………………...... 16

Rodgers v. United States Steel Corp.,
        70 F.R.D. 639, 647 (W.D. Pa. 1976) …………………………………...... 20

Ross v. A.H. Robbins, Inc.,
        700 F. Supp. 682, 684 (S.D.N.Y. 1988) …………………………….….... 12

Ruskay v. Waddell,
        552 F.2d 392, 398 (2nd Cir. 1977), cert. denied, 434 U.S. 911 (1977) … 7

San Francisco NAACP v. San Francisco Unified Sch. Dist.,
        576 F. Supp. 34, 47 (N.D. Cal. 1983) …………………………………..... 11

Slade v. Shearson, Hammill & Co. Inc.,
        79 F.R.D. 309, 313 (S.D.N.Y. 1978) …………………………………… 8

Stieberger v. Sullivan,
        792 F. Supp. 1376, 1377 (S.D.N.Y.), modified, 801 F.Supp. 1079
        (S.D.N.Y. 1992) …………………………………………………………… 16

Strougo v. Bassini,
        258 F. Supp. 2d 254, 260-1 (S.D.N.Y. 2003) ……………………….….... 16

Thompson v. Metropolitan Life Insurance Co.,
        216 F.R.D. 55, 61 (S.D.N.Y. 2003) …………………………………… 7

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,
        396 F.3d 96 (2d Cir. 2005) …………………………………………… 10, 11, 20

Weinberger v. Kendrick,
        698 F.2d 61, 73 (2d Cir. 1982) …………………………………………… *passim*

West Virginia v. Chas. Pfizer & Co.,
        314 F. Supp. 710, 743 (S.D.N.Y. 1970), aff'd, 440 F.2d 1079 (2d Cir.
        1971) …………………………………………………………………… 16

Women's Committee for Equal Employment Opportunity (WC=EO) v. Nat'l
Broadcasting Co.,
        76 F.R.D. 173 (S.D.N.Y. 1977) …………………………………………… 15

STATE CASES:

Grassilli v. Barr,
        142 Cal.App.4th 1260 (Ct. Cal. 2006) …………………………………… 15

<u>FEDERAL STATUTES:</u>

42 U.S.C § 1981…………………………………………………………….......   3, 5

<u>FEDERAL RULES:</u>

Federal Rule of Civil Procedure 23(e).………………………………………   *passim*

Federal Rule of Civil Procedure 23(c)(2)………………………………………   18

## INTRODUCTION

In advance of the April 23, 2007 Fairness Hearing, Plaintiffs Criss Murphy, Norman Jordan, Andino Ward, Eddie Barnes, Jr., Paul Hannon, Curtis Nelson, David Chambers, Herion Murphy, and Vincent Safford ("Class Representatives" or "Plaintiffs"), submit this Memorandum of Law in Support of (1) Final Approval of the Settlement and entry of the proposed Consent Decree ("Settlement"), and (2) entry of Final Order and Judgment approving the Settlement and dismissing the suit.

The proposed Consent Decree is a "fair, reasonable, and adequate" settlement of this class action between Plaintiffs and Defendant Super Steel Schenectady, Inc. ("Defendant," "SSSI" or "Super Steel").  After vigorous arm's-length negotiations before an experienced civil rights mediator, the parties agreed to the proposed class action settlement, which provides substantial equitable and monetary relief to the Plaintiffs and the class.  Accordingly, the Court should approve the proposed Settlement Decree because it meets all the relevant fairness standards for final approval under Federal Rule of Civil Procedure 23(e) and governing case law.

## PROCEDURAL HISTORY

Under Rule 23(e) of the Federal Rules of Civil Procedure, Court approval of a proposed class action settlement requires three steps: (1) preliminary approval of the settlement; (2) notice to the class of the settlement and the final approval hearing; and (3) final approval. See Rule 23(e). The first two steps have already occurred.

First, on January 25, 2007, the Court signed the "Preliminary Approval Order," attached as Exhibit A and:

    (a)    For settlement purposes preliminarily certified the class;

    (b)    Preliminarily approved the settlement of this class action as fair, reasonable, and adequate;

(c)     Directed the service of mail notice on class members; and

(d)     Set April 23, 2007, 1:30 p.m. as the date at which the court will determine whether the settlement of the action, including class counsel's attorneys' fees, should be approved as fair, reasonable, and adequate, and whether the judgment and order of dismissal with prejudice should be entered.

Second, the parties gave notice to the class in the form and manner specified in the Preliminary Approval Order.   (Exhibit A).   Within the time limits ordered by the Court, Defendants mailed the notice by first-class mail directly to each class member. Thus far, counsel has received no opt-out requests and no objections.   It will soon be time for the third step – a Fairness Hearing pursuant to Rule 23(e) – which is scheduled for April 23, 2007.   The task at the hearing is for the Court to conduct an inquiry into the fairness of the proposed Settlement.

In advance of the Fairness Hearing, Plaintiffs submit this Memorandum of Law in Support of Final Approval of the Settlement to the Court requesting an order:

(1)     approving as final the class-wide settlement of this action;

(2)     finally certifying the settlement class described below;

(3)     approving Plaintiff's Counsel's application for $444,000 in attorneys' fees; and

(4)     dismissing the action with prejudice.

In April 2006, Plaintiffs brought this action on behalf of all former and current African employees of Super Steel Schenectady, Inc., whether permanent or contract employees, who experienced and/or witnessed on-the-job racial discrimination and/or harassment at any time during the applicable liability period. (See Class Action Complaint, ¶ 27, attached as Exhibit B).

2

Plaintiffs alleged individual and class claims of racial discrimination and harassment in violation of the Civil Rights Act of 1866, 42 U.S.C § 1981, as amended.

In December 2006, Plaintiffs and Defendant entered into the proposed Consent Decree to resolve the above race discrimination claims. (See Consent Decree, attached as Exhibit C). The Settlement will provide generous equitable relief to Plaintiffs and the class.  For example, Super Steel has agreed to make the following changes to its personnel policies and procedures to prevent future racial harassment and promote equal employment opportunities at the company, including:

- SSSI will strengthen its "Violence in the Workplace" policy and the "Work Rules and Procedures" policy to emphasize SSSI's anti-discrimination policy and complaint procedures.

- Super Steel will redistribute, to all employees, written policies on: (1) Equal Employment Opportunity; (2) Harassment Free Workplace; (3) Violence in the Workplace; and (4) Work Rules and Procedures.

- SSSI will strengthen disciplinary policies to assure compliance with SSSI's EEO and diversity policies and applicable EEO laws, and to assure compliance with the provisions of the Consent Decree.

- SSSI will strengthen investigation and enforcement policies on how to respond to substantiated complaints of racial discrimination, harassment or retaliation to ensure compliance with the Company's EEO Harassment Free Workplace.

- SSSI will provide mandatory training to all managers and officers who possess the authority to hire, promote, select for training leading to advancement, or discharge employees on anti-discrimination laws and policies.

- SSSI will designate a Compliance Official who will be charged with overall responsibility for monitoring and assuring compliance with the terms of the Consent Decree.  The Compliance Official will be the Vice President of Human Resources and shall report directly to the CEO on this subject.  The Compliance Official's duties will include ensuring the implementation and monitoring of the anti-discrimination, anti-harassment, and anti-retaliation policies and training required by the Consent Decree, and he or she will be provided support staff, funds, and other resources by Super Steel as may be reasonably necessary to permit him or her to carry out the duties specified in the Consent Decree.

(See Exhibit C, pgs. 11-20).

The proposed Consent Decree also provides generous monetary relief of approximately $1,250,000 to the Named Plaintiffs, Larry Marshall, Dennis Coleman, Wayne Zimmerman, Eddie Stewart and the Settlement Class.   (Exhibit C, pgs. 20-25).   Named Plaintiffs Criss Murphy and Norman Jordan, who were allegedly victims of racially-motivated "hate crimes" while working at Super Steel, will each receive $250,000, less attorneys' fees.  The other named Plaintiffs, Larry Marshall, Dennis Coleman, Wayne Zimmerman and Eddie Stewart will receive the following amounts, less attorneys' fees:

| Name | Monetary Amount |
|------|-----------------|
| Larry Marshall | $35,000 |
| Dennis Coleman | $35,000 |
| Andino Ward | $75,000 |
| Eddie Barnes, Jr. | $75,000 |
| Paul Hannon | $75,000 |
| Curtis Nelson | $75,000 |
| David Chambers | $75,000 |
| Herion Murphy | $75,000 |
| Vincent Safford | $75,000 |
| Wayne Zimmerman | $25,000 |
| Eddie Stewart | $25,000 |

Further, SSSI will establish an interest bearing account of $105,000 for the benefit of class members qualified for monetary relief. SSSI will administer the fund and make payments from the fund in accordance with the terms of this Consent Decree.

As demonstrated fully herein, the Court should approve the Consent Decree for the following reasons:

- This complex class action case would be expensive and protracted to litigate.

- Class members have made no objections to the Settlement.

4

- Class members have made no requests to opt out of the Settlement.

- Both parties conducted extensive investigations regarding Plaintiffs' race discrimination and harassment claims.

- Plaintiffs' class and individual claims involve significant risk.

- Defendant might not be able to withstand a greater judgment at trial.

- The equitable relief and the monetary awards available for the eligible class members are fair, reasonable, and adequate.

- The Consent Decree is a result of arms-length negotiations between experienced Counsel following a two-day mediation before a nationally renowned civil rights mediator; it is not the product of fraud or collusion.

- Class Counsel are experienced in employment class action litigation and were well informed about the merits of the case.

When viewed in light of the well-established standards for approval of class action settlements, the Consent Decree should be approved because it is fair, adequate, and reasonable, and it was not the product of fraud or collusion. Under governing law which strongly favors class action settlements, this Court should certify the class and approve the Settlement.

## FACTUAL BACKGROUND

On April 18, 2006, nine current and former employees of Super Steel Schenectady, Inc. filed a lawsuit in the United States District Court for the Northern District of New York, Albany Division, asserting claims of racial discrimination and harassment in violation of the Civil Rights Act of 1866, 42 U.S.C § 1981, as amended. (Exhibit B). The Plaintiffs sought injunctive and equitable relief, as well as compensatory and punitive damages for themselves and the class. The named Plaintiffs sought to represent a class of current, former, and future African American Super Steel employees (permanent and contract employees).

Before filing this case, Class Counsel conducted an extensive investigation of the alleged race discrimination and harassment at Super Steel. Class Counsel conducted numerous on-site

interviews with clients, including Plaintiffs, as well as with the NAACP and the New York State Division of Human Rights ("SDHR").   All named Plaintiffs filed discrimination complaints against SSSI with SDHR.   Additionally, two class members, Dennis Coleman and Larry Marshall, filed discrimination complaints with the SDHR.   Finally, two named Plaintiffs filed police reports in response to the alleged "hate crimes" at Super Steel. Subsequent police investigations followed.   Both parties participated in these investigations.

Through these investigations, the parties were able to assess adequately the relative strengths and weaknesses of the respective parties' merits positions in this case, as well as the likelihood of the class being certified, and the possibility that any class certification decision could be modified on interlocutory appeal and/or post-trial appeal.   The parties were able to weigh and balance these fundamental issues on a fair and equitable basis.

In September 2006, the Plaintiffs and Super Steel participated in mediated settlement negotiations.   The negotiations were conducted with the assistance of a mediator with substantial experience in mediating putative or certified employment class actions.   These efforts resulted in an agreement to settle this action prior to the investment of substantial time and expenses in pre-certification discovery, certification briefing, and possible post-certification discovery, trial, and appeals.   The terms of the parties' agreement are contained in the proposed Consent Decree.

## ARGUMENT

### POINT I

### THE PROPOSED CONSENT DECREE IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE APPROVED IN ALL RESPECTS.

#### A.    THE LAW FAVORS CLASS ACTION SETTLEMENTS.

In In re Union Carbide Corporation. Consumer Products Business. Securities Litigation,

718 F. Supp. 1099, 1103 (S.D.N.Y. 1989), the district court reaffirmed the well-established judicial policy which favors settlement of class actions:

> In evaluating the settlement of complex class actions, the courts have long recognized that such litigation is notably difficult and notoriously uncertain . . . and that compromise is particularly appropriate. **The law favors settlements by the parties rather than by court disposition. . . .** (citations omitted)

In re Union Carbide Corporation, 718 F. Supp. at 1103.

See also: Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982); Thompson v. Metropolitan Life Insurance Co., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("Judicial discretion should be exercised in light of the general policy favoring settlement.").

In In re Computron Software, Inc. Securities Litigation, 6 F.Supp.2d 313, 317 (D.N.J. 1998), the district court capsulized the longstanding rule favoring class action settlements:

> Settlements of disputed claims, especially of complex class action litigations, are favored by the courts. See In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 784 (3rd Cir.) . . . ('The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'). . . .

In re Computron Software, Inc. Securities Litigation, 6 F.Supp.2d at 317.

Accord:  In re Twin Lab Corporation Securities Litigation, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("Judicial discretion should be exercised in light of the general policy favoring [class action] settlement."); Ruskay v. Waddell, 552 F.2d 392, 398 (2d Cir. 1977), cert. denied, 434 U.S. 911 (1977); In re Michael Milken and Associates Securities Litig., 150 F.R.D. 57, 65 (S.D.N.Y. 1993) ("Particularly in class actions, there is an overriding public interest in favor of settlement.  It is common knowledge that class actions suits have a well deserved reputation as

being most complex."); see also Parks v. Portnoff Law Associates, 243 F. Supp. 2d 244, 249 (E.D. Pa. 2003) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); In re Warfarin Sodium Antitrust Litigation, 212 F.R.D. 231, 254 (D. Del. 2002) ("There is an overriding public interest in settling and quieting litigation, particularly class actions."); Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Courts favor the settlement of class action litigation."); Lazy Oil Co. v. Witco Corporation, 95 F.Supp.2d 290, 330 (W.D. Pa. 1997) ("Class actions, with their notable uncertainties, difficulties of proof, and length, make application of this policy in favor of settlement particularly appropriate. . . . The law favors settlement, particularly in class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation").

Class action settlements promote the interests of both the litigants and the court by saving the expense of a trial while simultaneously reducing the burden on judicial resources.  Newman v. Stein, 464 F.2d 689, 691-92 (2d Cir. 1972); Slade v. Shearson, Hammill & Co. Inc., 79 F.R.D. 309, 313 (S.D.N.Y. 1978).  See also Weinberger v. Kendrick, 698 F.2d 61, 73 (2nd Cir. 1982), cert. denied, 464 U.S. 818 (1983); In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig., 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989); Foe v. Cuomo, 700 F. Supp. 107, 110 (E.D.N.Y. 1988), aff'd, 892 F.2d 196 (2nd Cir. 1989), cert. denied, 498 U.S. 972 (1990); Lewis v. Newman, 59 F.R.D. 525, 529 (S.D.N.Y. 1973).

> **B.   THE SECOND CIRCUIT'S STANDARD FOR APPROVAL OF CLASS ACTION SETTLEMENTS UNDER RULE 23(e).**

In order to approve a settlement, a district court must determine whether the proposed settlement, "taken as a whole, is fair, reasonable, and adequate." See Maywalt v. Parker &

Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995); Grant v. Bethlehem Steel Corp., 823

F.2d 20, 22 (2d Cir. 1985).  Courts in this circuit make this determination based upon "two types

of evidence:" (1) substantive, and (2) procedural.  Weinberger v. Kendrick, 698 F.2d 61, 73 (2d

Cir.1982).  Substantive evidence includes the "substantive terms of the settlement compared to

the likely result of a trial." Malchman v. Davis, 706 F.2d 426, 433 (2d Cir.1983); Weinberger,

698 F.2d at 74 (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v.

Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)).   Procedural  evidence

includes whether the settlement is the product of arm's length negotiations between experienced

counsel.  Chatelain v. Prudential-Bache Properties, Inc., 805 F.Supp 209, 212 (S.D.N.Y. 1992).

### (1)     Substantive Fairness

More than three decades ago, the U.S. Court of Appeals for the Second Circuit in City of

Detroit v. Grinnell Corp., 495 F.2d 448, 462-3 (2d Cir.1974) set forth the analytical framework

for evaluating the substantive fairness of a class action settlement. Banyai v. Mazur, 2007 WL

927583 (S.D.N.Y.) (attached as Exhibit D).   In determining whether to approve a proposed

settlement, a district court should consider the following nine factors:

    (1) the complexity, expense and likely duration of the litigation;

    (2) the reaction of the class to the settlement;

    (3) the stage of the proceedings and the amount of discovery completed;

    (4) the risks of establishing liability;

    (5) the risks of establishing damages;

    (6) the risks of maintaining the class action through the trial;

    (7) the ability of the defendants to withstand a greater judgment;

    (8) the range of reasonableness of the settlement fund in light of the best possible

    recovery; and

    (9) the range of reasonableness of the settlement fund in light of all attendant risks of

litigation.

Grinnell., 495 F.2d at 462-3.

In its consideration of these factors, the court should not determine the merits of the controversy or the factual underpinnings of the legal authorities advanced by the parties.  See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) ("It is well settled that in the judicial consideration of proposed settlements, the [trial] judge does not try out or attempt to decide the merits of the controversy.").  Instead, a court "should approve or disapprove a proposed agreement as it is placed before [it]." In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986), citing Plummer v. Chemical Bank, 668 F.2d 654, 655 n.1 (2d Cir. 1982). Because judicial modifications might hamper the effective administration of the terms of the proposed Consent Decree, a court should also refrain from modifying terms of the agreement.  In re "Agent Orange" Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987).

### (2)    Procedural Fairness

After examining the substantive fairness of a proposed settlement, the district court examines "the negotiating process by which the settlement was reached." Weinberger, 698 F.2d at 74. This examination considers "the experience of Counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." Malchman, 706 F.2d at 433 (citing Weinberger, 698 F.2d at 73). Courts have the duty to ensure that the settlement is not the product of collusion, In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir.1986), but "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, Inc., 396 F.3d at 116 (internal citation omitted).

C.     THE SUBSTANTIVE TERMS OF THE SETTLEMENT ARE FAIR,
       REASONABLE AND ADEQUATE UNDER THE SECOND CIRCUIT'S
       NINE FACTOR TEST FOR EVALUATING CLASS ACTION
       SETTLEMENTS.

As stated above, Courts evaluate the substantive terms of a settlement based on the following nine factors.  City of Detroit v. Grinnell Corp., 495 F.2d 448, 462-3 (2d Cir.1974).

(1)     The Complexity, Expense and likely Duration of this Litigation Favor
        Final Approval

The first factor – the complexity, expense and likely duration of this case -- favors final approval of the Settlement.  See City of Detroit v. Grinnell Corp., 495 F.2d 448, 462-3 (2d Cir.1974).  It is well-settled that civil rights class actions are complex.  San Francisco NAACP v. San Francisco Unified Sch. Dist., 576 F. Supp. 34, 47 (N.D. Cal. 1983) (the complexity and duration of trial would seriously diminish the value of whatever additional relief might be obtained by further litigation, when trial was expected to last between three and five months and the plaintiffs alone planned to call dozens of witnesses during the liability stage of the trial); see also Officers for Justice v. Civil Sev. Comm'n., 688 F.2d 615, 629 (9th Cir. 1982) ("[t]he track record for large class action employment discrimination cases demonstrates that many years may be consumed by trial(s) and appeal(s) before the dust finally settles").

Virtually every court approving a class action settlement refers to the sheer enormity and complexity of the litigation as a reason weighing heavily in favor of settlement.  See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (recognizing "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

Additionally, the costs and burden of further litigation are very strong factors supporting this Settlement.  See In re Michael Milken & Associates Securities Litig., 151 F.D.R. 46, 48 (S.D.N.Y. 1993) ("Typically, the magnitude of damages becomes a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury."); In re United States Oil & Gas Litig., 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation… can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.").

### (2)     The Reaction of the Class to the Settlement Favors Final Approval

Not one class member has objected to the Settlement, or requested exclusion from it. This favorable reception by the class constitutes "strong evidence" of the fairness of a proposed settlement and supports judicial approval.  See Banyai, at *9 (attached as Exhibit D) (citing Grinnell, 495 F.2d at 462); Ross v. A.H. Robbins, Inc., 700 F. Supp. 682, 684 (S.D.N.Y. 1988) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement").  This factor also supports approval of this Settlement.

### (3)     The Stage of the Proceedings and the Amount of Discovery Completed Favor Final Approval

Courts consider the stage of the proceedings when evaluating a class action settlement. Frank v. Eastman Kodak Co., 228 F.R.D. 174, 185 (W.D.N.Y. 2005).  Such evaluation not only ensures that Class Counsel understands the strengths and weaknesses of the class claims before compromising them, but also affords the Court with an opportunity to "intelligently make...an appraisal of the Settlement." Id.

Here, Class Counsel conducted numerous on-site interviews with Super Steel employees, including Plaintiffs, and received information from the investigations undertaken by the NAACP and the SDHR.  Police investigations related to potential "hate crimes" against Plaintiffs Murphy and Jordan were also done.   Class Counsel examined many documents related to these investigations.   Significant information was also exchanged between the parties prior to and during settlement discussions.   At the two-day mediation, the parties engaged in arm's length negotiations before a settlement was finally reached.   Accordingly, this factor also supports approval of this Settlement.

### (4, 5, 6) Risks of Class Prevailing -- Establishing Liability, Damages and Maintaining the Class Action Through Trial -- Favor Final Approval

Litigation inherently involves risks. See In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y.1997).  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." In re Ira Haupt & Co., 304 F.Supp. 917, 934 (S.D.N.Y.1969).  The risks involved in this litigation weigh heavily in favor of settlement.

The parties stipulated to class certification for settlement purposes only.  If the class action were litigated, however, SSSI would oppose certification. Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C., 2006 WL 3681138 (E.D.N.Y.,2006) (attached as Exhibit E) ("The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification … Accordingly, this factor weighs in favor of approving the settlement.").

By no means was it a foregone conclusion that the proposed class would be certified by the Court.  Class certification is particularly difficult to achieve in racial harassment hostile-work-environment suits like the one at bar.  See Armstrong v. Whirlpool Corporation, 2007 U.S.

13

Dist. LEXIS 14635 (M.D. Tenn. 2007) (attached as Exhibit F) (denying class certification in racial harassment case).  See further, City of Detroit v. Grinnell Corp., 495 F.2d 448, 457 (2nd Cir. 1974) ("Finally, the record shows that if the proceedings had continued and had not been stopped short by the settlement offer, there would have been a serious question as to whether these actions could have been maintained as class actions at all.  In its approval of the settlement offer, the district court outlined some of the factors which militate against the use of the class action device.  The separate liability and damage issues present enormous difficulties."); Hanlon v. Chrysler Corporation, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The risk of maintaining class action status throughout the trial" was an important factor in approving class action settlement.).  Accordingly, these factors also support approval of this Settlement.

<div align="center">(7)   <b>The Ability of the Defendants to Withstand a Greater Judgment<br>Favors Final Approval</b></div>

Evidence that a defendant will not be able to pay a greater judgment at trial than the amount offered in settlement tends to weigh in favor of approval of settlement, since the "prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures." In re Warner Comm'cns Sec. Litig, 618 F. Supp 735, 746 (S.D.N.Y.1985).

Here, this factor weighs heavily in favor of settlement.  SSSI may not have been able to pay a greater judgment at trial.  Financial constraints at Super Steel led the parties to agree to a payment plan to distribute monetary awards to class members.  The distribution will be made in three parts: the first distribution will occur ten days after the Final Approval date; the second will occur on January 1, 2008; and the last will occur on July 1, 2008. (Consent Decree, Exhibit C, p. 20)

### (8, 9)   The Settlement Fund Is Clearly Reasonable In Light of the Best Possible Recovery and All Attendant Risks of Litigation

Even absent the risk of establishing liability, the value of the settlement fund justifies settling this case.  Under the Settlement, those class members who did not opt out of the class will each receive a generous award, which is reasonable for the class to accept given the risk of establishing liability and damages in this case.

Fundamental to analyzing a settlement's fairness is "the need to compare the terms of the compromise with the likely rewards of litigation." Weinberger, 698 F.2d at 73 (quoting TMT Trailer Ferry, 390 U.S. at 424-25).  Here, the proposed Settlement fund falls well within the range of damages awarded to successful plaintiffs with claims under federal and state anti-discrimination laws.  See Patterson v. Balsamico, 440 F.3d 104 (2d Cir. 2006) (affirming jury award of $100,000 to black male correction officer for pain and suffering where plaintiff had alleged racial slurs and assault by other officers, and had experienced disparate treatment regarding promotions, discipline, and training under Title VII and New York state laws); Grassilli v. Barr, 142 Cal.App.4th 1260 (Ct. Cal. 2006) (affirming jury award of $210,000 in economic damages, and $290,000 in non-economic damages to motorist for civil rights violations by California Highway Patrol).

Additionally, courts have recognized that a class-wide settlement does not need to be distributed equally among the members in order to satisfy fairness requirements.  See generally, Women's Committee for Equal Employment Opportunity (WC=EO) v. Nat'l Broadcasting Co., 76 F.R.D. 173 (S.D.N.Y. 1977) (holding that where no collusion exists, it is entirely appropriate for a named plaintiff to receive a larger award than the class); Leisner v. New York Tel. Co., 398 F. Supp. 1140 (S.D.N.Y. 1974) (recognizing the validity of larger awards to class

15

representatives); <u>Holmes v. Continental Can Co.</u>, 706 F.2d 1144, 1148 (11th Cir. 1983) ("there is no rule that settlements benefit all class members equally"); <u>7-Eleven v.  Southland Corp.</u>, 85 Cal.  App. 4th 1135 (Ct. Cal 2000) ("There is no legal requirement that all members of the class must participate equally in any settlement."); <u>see</u> <u>also</u>, <u>In re Jackson Lockdown/MCO Cases</u>, 107 F.R.D. 703, 710 (E.D. Mich. 1985) (recognizing the propriety of rewarding plaintiffs who protested and helped bring rights to a group who had been victims of alleged discrimination).

Finally, the proposed Settlement balanced against the risks of litigation favors final approval. As previously discussed, class certification presents significant risks in this litigation. <u>See</u> <u>also</u> <u>Republic Nat'l Life Ins. Co. v. Beasley</u>, 73 F.R.D. 658, 668 (S.D.N.Y.1977) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion.").  <u>Strougo v. Bassini</u>, 258 F. Supp. 2d 254, 260-1 (S.D.N.Y. 2003) ("The proposed settlement is a reasonable result in both absolute terms and when balanced against the various risks facing plaintiff's case. Moreover, even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery.")

In the context of class action settlements, it is entirely proper "to take the bird in the hand instead of the prospective flock in the bush." <u>West Virginia v. Chas. Pfizer & Co.</u>, 314 F. Supp. 710, 743 (S.D.N.Y. 1970), aff'd, 440 F.2d 1079 (2d Cir. 1971); <u>see</u> <u>also</u> <u>Stieberger v. Sullivan</u>, 792 F. Supp. 1376, 1377 (S.D.N.Y.), <u>modified</u>, 801 F.Supp. 1079 (S.D.N.Y. 1992) (noting in approving settlement, that the "compromises represented therein constitute a reasonable balance,

especially bearing in mind the length of time that would elapse, absent a settlement, before any concrete benefits could be delivered to any class member.").   Accordingly, this factor favors approval of the Settlement.

> **D.      THE SETTLEMENT IS A PRODUCT OF ARM'S LENGTH NEGOTIATIONS AMONG EXPERIENCED COUNSEL.**

In evaluating the procedural fairness of a proposed settlement, the district court will consider whether the agreement was properly negotiated at arm's length by the parties. "As long as the integrity of the negotiating process is ensured by the Court, it is assumed that the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." In re Painewebber Ltd. P'ships Litig., 171 F.R.D. at 132. This inquiry considers whether the settlement process has been corrupted and whether Class Counsel has adequately represented the class. See Weinberger, 698 F.2d at 74.

> **(1)      Experienced Counsel Represented Both Parties in This Case.**

Courts recognize that great weight is accorded to the recommendations of counsel, who are in the best position to evaluate the strengths and weaknesses of their cases. Chatelain v. Prudential-Bache Properties, Inc., 805 F.Supp 209, 212 (S.D.N.Y. 1992).   Both parties were represented by experienced counsel with substantial experience in employment class action litigation. Defense Counsel, the law firm of Kaufman Borgeest & Ryan LLP, is a nationally recognized firm whose reputation for zealous representation of its clients is well known.   Class Counsel, the law firm of Sanford, Wittels & Heisler, LLP, is a Plaintiffs' class action law firm known largely for its successful pursuit of civil rights cases, particularly in the Title VII arena. Counsel's recommendation to approve the Settlement is well informed.

17

      (2)        **The Proposed Consent Decree Was Negotiated by Experienced Counsel After a Two-Day Mediation Before a Mediator With Significant Experience in Class Action Settlements.**

The Consent Decree is the product of arm's length negotiations between Class Counsel and Super Steel.  <u>Chatelaine v. Prudential-Bache Sec. Inc.</u>, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (A strong initial presumption of fairness attaches to a proposed settlement when it is shown to be the result of arms-length negotiating.)  The protracted settlement discussions were conducted over many weeks and culminated with a mediated settlement negotiation in September 2006 with the assistance of an experienced mediator of employment class actions.  During the settlement discussions, the parties conducted lengthy in-person meetings that were accompanied by numerous telephone conferences, exchanges of written statements of position, and cooperative drafting of the voluminous settlement documentation now on file with the Court.  There is no evidence that the negotiations were collusive in any way.  Accordingly, this factor favors approval of the Settlement.

## POINT II

### <u>APPROPRIATE AND ADEQUATE NOTICE OF THE</u><br><u>SETTLEMENT HAS BEEN PROVIDED TO THE CLASS.</u>

In addition to requiring an examination of the fairness of a class action settlement, Rule 23(e) requires that "notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs."  The class notice must generally meet two requirements to satisfy Rule 23(e) and due process standards: (1) it must "[f]airly apprise the… members of the class of the terms of the proposed settlement and (2) the options that are open to them in connection with [the] proceedings."  <u>Maywalt v. Parker & Parsley Petroleum Co.</u>, 67 F.3d 1072, 1079 (2d Cir. 1995) (quoting <u>Weinberger v. Kendrick</u>, 698 F.2d

61, 70 (2d Cir. l982)).[1]   The notice "should describe the action and the plaintiffs' rights in it." Phillips Petroleum Co. v. Shuns, 472 U.S. 797, 812 (1985).   The notice process in this case accomplished both of these required objectives.

> **A.    THE PARTIES HAVE COMPLIED FULLY WITH THE NOTICE ORDERED BY THE COURT.**

The parties have complied fully with the notice ordered by the Court in its January 25, 2007 Preliminarily Approval Order.   (Exhibit A).   Specifically, notice was sent by first-class mail directed to the best available address for each member of the class.   In those cases where notices were returned undeliverable, tracing was conducted to obtain additional address information and additional copies of the notice were mailed.

Through the notice process, the parties have succeeded in delivering *actual notice* to approximately 100 class members.   Repeated efforts were made to reach the remaining class members.   The notice procedures implemented in this case greatly exceed the requirements of both Rule 23(e) and the applicable due process standards.   See In re Prudential Secs. Ltd. Pshps. Litig., 164 F.R.D. 362, 369 (S.D.N.Y. 1996) ("notice by mail sent to the last known address…meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice"); Weinberger v. Kendrick, 698 F.2d 61, 71 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983) (approving of mailing of individual notices to the last known addresses of all class members); see also

---

[1] This is a lower threshold than under Rule 23(c)(2), which requires "the best notice practicable under the circumstances, including individual notice to all members who can easily be identified through reasonable effort."   By contrast, due process requires only that a class action settlement notice be "reasonably calculated, under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).   Nevertheless, the notice in this case satisfies even the more demanding Rule 23(c)(2) standard.

<u>Georgine v. AmChem Prods.</u>, 160 F.R.D. 478 (E.D. Pa. 1995) (notice by U.S. mail satisfies Rule 23(e)); <u>Hoffman Elec., Inc. v. Emerson Elec. Inc.</u>, 800 F. Supp. 1279 (W.D. Pa. 1992) (U.S. mail and fax, where possible).

>   **B.    THE NOTICE INFORMED ALL CLASS MEMBERS OF THE SETTLEMENT TERMS AND THEIR RIGHT TO OBJECT AND EXCLUDE THEMSELVES FROM THE SETTLEMENT.**

Class notice in this case informed each class member of the terms of Settlement. Courts recognize that class notice is sufficient if it "may be understood by the average class member." <u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d 96, 114 (2d Cir. 2005); <u>see also</u> <u>Churchill Vill. v. G.E.</u>, 361 F.3d 566, 575 (9th Cir. 2004), cert. denied, 125 S. Ct. 556 (2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard"); <u>Rodgers v. United States Steel Corp.</u>, 70 F.R.D. 639, 647 (W.D. Pa. 1976) (class notice is sufficient if it will "enable reasonable and competent individuals to make an informed choice" and need not "be reduced to a pabulum" to enable every class member to digest its impact"). The information contained in the notice may be general in nature and can refer the class members to the court or counsel for detailed information. <u>See</u> <u>Handschu v. Special Servs. Div.</u>, 787 F.2d 828 (2d Cir. 1986).

Here, the notice described the characteristics of the persons included within the class and set forth the choices each class member could make regarding the Settlement. The notices also explained in great detail the procedures for filing a claim under the Settlement and for objecting to the proposed Settlement. The notices provided class members with the information necessary to contact Class Counsel if they had questions. Finally, the notices explained the binding effect of the Consent Decree. The content of these notices clearly satisfied the requirements of Rule

23(e).

## POINT III

### CERTIFICATION OF THE SETTLEMENT CLASS
### IS APPROPRIATE AND WARRANTED.

This Court should certify the class as final.  The benefits of the proposed Settlement can be realized only through the final certification of a settlement class.  This Court preliminarily certified the class in its Preliminary Approval Order.  (Exhibit A).  Final certification is now appropriate.

### CONCLUSION

For the foregoing reasons, the Court should certify the class, approve the Consent Decree, and enter a Final Order and Judgment approving the Consent Decree and dismissing the lawsuit.

Dated: April 19, 2007

<div style="margin-left:3em">

Respectfully submitted,

    S/ Steven L. Wittels
Steven L. Wittels, (SLW-8110)
Jeremy Heisler, (JH-0145)
**SANFORD WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

David Sanford, D.C. Bar No. 457933
**SANFORD WITTELS & HEISLER, LLP**
1666 Connecticut Avenue, NW, Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Grant Morris, D.C. Bar No. 926253
**LAW OFFICES OF GRANT E. MORRIS**
1666 Connecticut Ave, NW, Suite 310

</div>

Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile:  (202) 742-7776

*Attorneys for Plaintiffs and the class*